CROSS, Respondent, v. ST. LOUIS TRANSIT
COMPANY, Appellant.

St. Louis Court of Appeals, October 16, 1906.

STREET RAILWAYS: Negligence: Prima Facie Case. In an action
for damages to plaintiff caused by a street car colliding with,
and killing his horses while he was driving them to a moving
van, the evidence is examined and held sufficient to submit to
the jury the issues whether the defendant was negligent in fail-
ing to have a signal light on the car and whether the motor-
man was negligent in failing to keep a vigilant watch and
in failing to stop the car as soon as possible after he discovered
or might have discovered the perilous position of the plaintiff's
wagon and team.

Appeal from St. Louis City Circuit Court.—*Hon. Or-
rick Bishop,* Judge.

AFFIRMED *si*.

*Boyle & Priest, Edward T. Miller* and *T. E. Francis*
for appellants.

(*a*) It was not proved that the car could
have been stopped after the motorman saw, or by the
exercise of ordinary care could have seen, the wagon on
the track, in time to have prevented a collision with it.
Zurfluh v. Railway, 46 Mo. App. 642; Moore v. Railway,
176 Mo. 545. (*b*) The failure, if any, to pro-
vide the car with a signal light could not have been the
proximate cause of the injury. Stepp v. Railroad, 85
Mo. 229; Meade v. Railroad, 68 Mo. App. 92; Heinzle
v. Railroad, 182 Mo. 528.

*Ernest E. Wood* for respondent.

GOODE, J.— This is an action for the loss sus-
tained by plaintiff from the death of two horses killed in

a collision with one of defendant's cars. The team was attached to a furniture van in which a picnic party was riding. They were proceeding along Gravois street near Meramec street in the city of St. Louis. A car was detected approaching the wagon from the rear. The motorman of the car was ringing the gong as a signal to the driver to turn off the track. The bad condition of the street on the right side and the obstruction presented by some telegraph poles, prevented the driver from turning off on the right and forced him into the left-hand track. The van stalled on the left track and at the same instant a car was coming directly toward it on that track. Some persons in a wagon ahead of the van and others in the van, shouted to the motorman of the latter car to cut off his power; but according to the testimony, he looked like he was stunned and failed to put on his brake or turn off the power. The plaintiff's witnesses swore he was halloaed to when two hundred feet from the van, but made no effort to check the speed of the car, which was high. Some witnesses testified there were no lights on the head of the car and that the furniture van was under a street light so that the motorman could see it. The front of the car collided with the team and the tongue of the wagon. Witnesses said the motorman made no attempt to reverse the power. So runs the testimony for the plaintiff, except as to the amount of damages assessed; as to which certain errors are assigned. Among these is that the court permitted plaintiff to testify to the loss of $75 in his business of moving household goods, on account of the loss of his team. One witness swore the car was going at a fast speed and did not change its speed before it struck the wagon, but struck with full force.

For the defendant the motorman testified that the night was hot and cloudy; that he had an overhead light on his car, but could not see over forty-five to fifty feet ahead and when he first saw the van on the track coming

toward him he was only thirty-five feet away; that he at once applied the brake and reversed the power, but the car struck the end of the wagon tongue; that no warning was given him of the presence of the wagon on the track; that the speed of his car was from ten to twelve miles an hour and he stopped it in about ten feet after hitting the wagon; that he did not hear any one halloa to him until he was in a very short distance of the wagon, when he immediately tried to stop the car and that it only ran ten feet after the collision. Such, in substance, was the testimony for the defendant. One witness for the defendant was the driver of the van. He testified he turned across the track to let a car behind him pass and got stuck in the track; that he then saw the other car coming and yelled, but the motorman paid no attention and kept coming as fast as he could; that the witness could see the motorman was looking right at him, but witness thought he deliberately ran into the wagon.

An issue of fact was raised as to whether the driver of the van was drunk or sober, but as to this issue there was conflicting evidence.

The only instruction requested by plaintiff was that no damages should be allowed for the injury to the wagon. Defendant requested a peremptory instruction in its favor, which the court refused, and this ruling is assigned for error on the ground that there was no evidence to show the motorman could have stopped the car after he discovered or, by the exercise of ordinary care, could have discovered the furniture van on the track; and the further ground of lack of evidence to show the car was not provided with a signal light or was running at a negligent speed. The court took the issue of unlawful speed from the jury as ground for a verdict. Several witnesses swore the car had no signal light, and their testimony is not to be set aside because the motorman swore to the contrary. The acts of negligence on which

the jury might have found the issues for the plaintiff were the failure to have a signal light on the car and the failure of the motorman to keep vigilant watch as required by the city ordinance and stop his car in the shortest time and space possible after he discovered the perilous position of plaintiff's team and wagon. It is true no witness testified explicitly that the car could have been stopped after the motorman discovered, or ought to have discovered, the wagon on the track; but there was testimony going to show it could have been discovered by him when two hundred feet away, both by sight and the warning shouts of the occupants of the wagon. Now his own testimony is that he was running at a speed of twelve miles an hour, and if evidence is required to support the inference that the car could have been stopped under two hundred feet, such evidence is in the record; for, according to the motorman it was stopped in fifty feet after he discovered the wagon, though, of course, the collision assisted in checking its momentum. But we think the jury might well find that it could have been stopped by the use of the proper appliances in less than two hundred feet.

The verdict was for $450, from which plaintiff remitted $125. It was still excessive according to plaintiff's own estimate. The only recoverable damages under the instructions was $250 for the horses. If plaintiff will remit $75 in ten days, as he has offered to do, the judgment will be affirmed; otherwise it will be reversed and the cause remanded. All concur.